Argued September 23, affirmed October 13, rehearing denied December 1, 1914.

## SMITH *v.* HURLEY.

(143 Pac. 1123.)

**Evidence—Competence—Value.**

1. Where a wrench, or patent rights thereon, have no market value, other evidence must be resorted to to prove their value.

**Appeal and Error—Review—Questions of Fact—Findings by Court.**

2. In an action at law tried without a jury, the findings have the force and effect of a verdict, and will not be disturbed, if there is any competent evidence that is substantial or satisfactory to support them.

**Fraud—Trover and Conversion—Evidence—Weight and Sufficiency.**

3. On a trial for conversion of patent rights and for deceit, evidence *held* to authorize the court, sitting as a jury, to find that the patent rights were of the value of $8,500, the price for which they were sold by defendant.

[As to conversion of personal property sufficient to sustain action of trover, see note in 24 Am. St. Rep. 795.]

**Evidence—Competency—Value—Offer to Sell.**

4. On an issue as to the value of patent rights, evidence of an offer by defendant to sell is admissible as against him to show that the value is the amount at which the offer is made, and not merely to show that the value does not exceed that amount.

[As to trover for conversion of property having no commercial value, see note in Ann. Cas. 1914B, 823.]

**Appeal and Error—Review—Harmless Error—Trial by Court—Remarks of Judge.**

5. Remarks by the judge on a trial without a jury, denominating the transaction between plaintiff and defendant as a plain steal by

the latter, and stating that this was clear from the evidence, and likening plaintiff to the fellow that went down from Jerusalem to Jericho and fell among thieves, not constituting a part of the findings, are not ground for reversal.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.  Statement by MR. JUSTICE BEAN.

Two actions were commenced by Edward H. Smith against John W. Hurley.

From a judgment in favor of the plaintiff for $8,150, the defendant appeals.

In the first action the plaintiff alleges that on March 9, 1912, the plaintiff being a cripple, unable to walk or to make any investigation or effort to sell either of his two patent rights on a wrench, transferred to the defendant a one-half interest in the same, with the understanding that he would use his best efforts to promote and sell the patent rights, for which he was to receive a half interest in all the receipts therefor; that on March 5, 1913, the defendant fraudulently induced the plaintiff to transfer to him the remaining half interest for $350, well knowing that the same was worth not less than $12,000, and after he had actually closed a sale thereof for not less than the latter amount, to plaintiff's damage in the sum of $11,650.

In the second action the plaintiff avers that the defendant attempted to promote and make a sale of the half interest in the patent rights solely upon his own behalf and for his own benefit, without regard to the agreement between them; that the defendant has wholly failed and refused to carry out the agreement, and therefore has no interest in the patent rights, which are of the value of $12,000, for which sum judgment is asked, after alleging demand and refusal to return.

The answer to each complaint is much the same. After denying the material allegations, it is alleged that the wrenches and patent rights have no market value, and that their value depends upon the financial ability of the inventor or his assigns to manufacture and market the invention; that subsequent to the issuance of the latter's patent, and prior to March 9, 1912, the plaintiff had been endeavoring to promote and sell the rights for various small sums, and had been unable to do so; that about March 9, 1912, the plaintiff, knowing that the defendant had had years of experience in handling patent rights, represented to him that the rights were absolutely valueless in his hands, and that he would sell the whole for a few thousand dollars. The defendant refusing to purchase the whole interest, the plaintiff offered to give the defendant a one-half interest if the latter would undertake and agree to use his earnest endeavors to sell and dispose of the other half, retained by the plaintiff, at a price satisfactory to him; that the defendant refused to accept this offer, but paid the plaintiff $10 therefor; that it was then agreed between them that the defendant would use his best efforts to sell the half interest retained by the plaintiff, who made assignments of the same to the defendant; that the latter endeavored to sell the patent rights, and in so doing expended large sums of money, but without success; that on February 28, 1913, the defendant purchased of the plaintiff his half interest for the sum of $350, which was then paid and regular assignments made, the defendant thereby becoming the owner of all the rights.

The replies put in issue the allegations of the answers.

Upon the trial the plaintiff introduced evidence tending to support the allegations of his complaint. He testified that not a cent was received for the assignments, but that the understanding was that the defendant would promote and sell a one-half interest in the patent, for which he was to have one-half of the money for the whole patent; that later a memorandum was signed, specifying the agreement between them, which was introduced in evidence; that about March 5, 1913, the defendant called on him at Dallas, Oregon, and told him he could not and never had done anything with the wrench, and offered him $350 therefor, for which he (the plaintiff) executed a bill of sale; that he knew nothing of any arrangement with the defendant to make a sale, or that the latter had done anything to sell or promote a sale, except that at one time the defendant went to The Dalles and had negotiations for a sale of a one-half interest for $10,000, of which amount the plaintiff was to have one-half. In making the original deal the plaintiff gave the defendant five wrenches, which had cost him $90. After the sale on March 5, 1913, the plaintiff learned that the defendant had already sold the patents before he went to see him at Dallas. The wrench, which appears to be a useful instrument, was introduced in evidence.

John F. Parrot, witness for the plaintiff, testified to the effect that in the latter part of February the defendant stated that he had a deal on to sell the wrench in question, and that later he said: "I can beat you selling patents. * * We have both been working on the proposition quite a while. I have made a $14,000 deal." That he inferred that this was for a one-half interest in the patent rights for the wrench, and believes that the defendant mentioned the name of Mr. Chapin

as the purchaser. There was some evidence to the
effect that, while the bill of sale was dated February
28, 1913, it was executed on March 5, 1913.

J. J. Read, also witness for the plaintiff, stated in
substance that he had dealings with the defendant,
Hurley, which terminated in a contract dated March
6, 1913; that he had been negotiating with the plain-
tiff the day before; that the contract was between the
defendant, Hurley, as the first party, and H. C. Chapin
and J. J. Read, as second parties. Mr. Read testified
that the second parties were to pay Hurley $8,500 for
a half interest; that that was not a cash payment;
that at this time Mr. Hurley owned the whole patent,
and showed him the assignments thereof, but that the
defendant had only a half interest in the patent at
the time the witness commenced to deal with him. The
contract provided, in substance, that the first party
sells to the second parties for $8,500, "to be paid at
times, in the manner, and upon the condition herein-
after specified, and not otherwise," an undivided one-
half interest in the patent; that the parties organize
a corporation for the manufacture of the wrenches
and for the promotion of the sale thereof, $8,500 to be
paid to the first party as follows: $2,125 cash (which
was acknowledged), and the balance, $6,375, within 10
months from the time such wrenches are placed on the
market for sale, provided the second parties receive
during that time, as profits for their interest in the
company, the sum of $8,500, and if they receive less
they pay in proportion, and the balance is remitted;
that if there are no profits they pay nothing for their
interest beyond the $2,125.

H. L. Chapin, witness on behalf of the plaintiff, tes-
tified in substance that the matter of the alligator
wrench came to his attention two or three weeks before

the sale; that Hurley offered him one-half interest for $8,500 a couple of weeks before the sale was consummated.

In his own behalf defendant, Hurley, testified in substance that Smith was very anxious for him to take hold of the wrench, and told him he would let him have an undivided one-half interest in the United States and Canada patents, if he would promote the proposition; that he gave Smith $5 for a half interest in each of the patents; that in the latter part of 1912 he had an offer of $500 for a half interest, but that plaintiff objected; that he then offered the plaintiff 160 acres of land, which offer he also rejected; that Smith wrote him, stating that if he would give him $500 or his land he would gladly take it; that he went down and told Mr. Smith he had prospects of a deal on hand, but that he had to own the whole interest in order to handle it; that Smith wanted $500, but that he could not afford to give that, and offered him $350 for all of his right, title and interest in the patent. Mr. Hurley also testified that he made no deal up to the time he met Smith, simply a working contract, and that he does not know whether he will realize anything out of the deal or not; that he made a trip back east to get a manufacturer for the wrench.

The court found the defendant guilty of fraud, and rendered judgment for the value of a one-half interest in the patents less $350.　　　AFFIRMED.

For appellant there was a brief over the names of *Messrs. Sargent & Swope* and *Messrs. Sweek & Shelton,* with an oral argument by *Mr. H. K. Sargent.*

For respondent there was a brief over the name of *Messrs. Abel & Burnett,* with an oral argument by *Mr. Coy Burnett.*

MR. JUSTICE BEAN delivered the opinion of the court.

The main contention of the defendant upon this appeal is that there is no evidence to support the finding made by the trial court that the value of a one-half interest in the patent rights was $8,500. The question of fraud is not contested upon this appeal.

1–3. It is conceded that the wrench, or the patent rights, have no market value; therefore evidence other than that must of necessity be resorted to, to prove its value. It is the law in this state that, upon an appeal of a cause tried by the court without a jury, the findings of the court have the force and effect of a verdict of a jury, and will not be disturbed, if there is any competent evidence that is substantial or satisfactory to support the findings. The wrench was submitted to the court for examination, and also evidence of the offer of the defendant to sell a one-half interest in the patents, and of the sale thereof, to Chapin and Read upon the basis of $8,500, was introduced. This was in addition to the evidence explaining the purpose of the patented wrench, its operation, and the evidence of the inventor, stating the cost of five wrenches for samples to be $90. In regard to the offer of sale for $8,500, made by the defendant to Mr. Chapin about two weeks before the sale was consummated, Mr. Chapin testified that he told him "that, unless I had a man to go into it with me to handle it, I would not take it, but that I thought that I had a man of that kind"; that he afterward told the defendant the man he had in view could not go into it, and that "it was off." It appears that afterward the sale was made, as shown by the contract. The evidence of Mr. Chapin in regard to the offer of sale, as well as that of Mr. Read that the sale was made on a basis of $8,500, tends

to show that in the negotiations and the consumma-
tion of the sale the value of the patent rights was
estimated at that figure. The court, acting in the
capacity of a jury, could reasonably believe from Mr.
Read's evidence that, the patent rights being sold on
a basis of $8,500, the value thereof in the transaction
was estimated or fixed at that amount; hence we have
a stronger case than where evidence of an offer to
sell is alone in evidence.

4. The general rule as to such showing of an offer
to sell is stated in 1 R. C. L., page 494, Section 32:

"Where the value of property owned by a party is
in issue it is held, as a rule, that his declarations may
be proved by the opponent. * * While an offer of
the owner of property to sell it at a certain price is
not conclusive evidence of the value of the property,
yet such an offer is competent evidence against him as
an admission in fixing the value at or near the time
when the offer was made."

See, also, *Springer* v. *Chicago,* 135 Ill. 552 (26 N. E.
514, 12 L. R. A. 614); *Findlay* v. *Pertz,* 74 Fed. 681
(20 C. C. A. 662); *Joy* v. *Security Fire Ins. Co.,* 83
Iowa, 12 (48 N. W. 1049).

It appears to be the contention of the defendant's
counsel that an offer of sale by the owner tends only to
show that the property is of no greater value. The
Supreme Court of Wisconsin, in considering the ques-
tion in *Watson* v. *Milwaukee & M. R. Co.,* 57 Wis. 332
(15 N. W. 468), said:

"This evidence was introduced for the purpose of
showing that the land was in fact of greater value after
the road was located across it than the value placed
upon it by the appellants' witnesses. We think the
evidence was competent, not only as tending to prove
its real value after the railroad was located across it,
but as an admission on the part of the appellants of
such value."

Clearly in that case the evidence of an offer of sale by the owner was considered competent ·for the purpose of showing that the property was equal to the amount of the offer. In *East Brandywine & W. R. Co.* v. *Ranck*, 78 Pa. 454, the court said: .

"As evidence bearing upon the value of this property, Ranck's own declarations were certainly competent when offered by the company. His ·offer of it at a fixed price, and the sale of a portion of it, were facts proper to go to the jury as constituting his estimate of its value. It is true the sale of a portion of the property does not fix with certainty its market value as a whole, but it is an element fair to be considered by the jury."

It does not appear that the sale made by the defendant to Messrs. Chapin and Read was in any manner a forced sale, or that they purchased the patents on a basis of any more than they were really worth. The offer of sale made by the defendant near the time of the alleged conversion, and the actual sale made by him on the day after the purchase from the plaintiff, according to the defendant's testimony, or according to the evidence on the part of the plaintiff before that time, was competent for the court acting as a jury to consider in determining the value of the property. It seems that the arrangement between Hurley and Chapin and Read in regard to the manufacture and sale of the patented wrench pertained only to the payment of the price fixed, and not to the price itself.

As against the seller, the price at which property is sold is generally recognized, not only as competent, but as the best, evidence of its value. The United States Supreme Court in *The Albert Dumois,* 177 U. S. 240 (44 L. Ed. 751, 20 Sup. Ct. Rep. 595), held that the actual sale price of a one-half interest in a

vessel was better evidence of value than the conflicting opinions of experts. See, also, *Parmenter* v. *Fitzpatrick,* 135 N. Y. 190 (31 N. E. 1032), where, in an action against the sheriff for making a wrongful sale, the price at the sale was held competent to prove the amount of damages. To the same effect, see *Baker* v. *Seavey,* 163 Mass. 522 (40 N. E. 863, 47 Am. St. Rep. 475); *Raymond Syndicate* v. *Guttentag,* 177 Mass. 562 (59 N. E. 446).

5. Exception was taken to the remarks made by the judge in a lecture to the defendant, in which he denominated the transaction between the plaintiff and the defendant as a plain steal on the part of the latter, and stated that this was clear from the evidence, and likened the plaintiff to the fellow that went down from Jerusalem to Jericho and fell among thieves. These remarks are not a part of the findings of fact in the case. There was no jury to be prejudiced, and they did not constitute reversible error. Whether the comments of the judge bore fruit, or had any effect upon the defendant, we do not feel called upon to determine.

Competent evidence being found in the record to sustain the findings of the trial court, they should not be disturbed; therefore, in accordance with the mandate of the Constitution (Article VII, Section 3), which directs that "no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict," the judgment of the lower court is affirmed.     AFFIRMED.     REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.