Argued October 3, 1977, reversed January 10, petition for rehearing denied by opinion April 18, 1978

See 282 Or 155, 578 P2d 769

GALEGO, *Plaintiff-Respondent,*

*v.*

KNUDSEN, et al, *Defendants,*

KNUDSEN, *Defendant-Appellant.*

(TC 74-471, SC 24602)

573 P2d 313

[ 44 ]

Michael J. Gentry, Portland, argued the cause for Defendant-Appellant Mildred Knudsen. With him on the briefs were Tooze, Kerr, Peterson, Marshall & Shenker, Portland.

David V. Brewer, Eugene, argued the cause for Plaintiff-Respondent. With him on the brief were Sahlstrom & Lombard, Eugene.

LENT, J.

**LENT, J.**

This case involves the 1971 sale of the Reedsport Cheese Factory by Svend and Mildred Knudsen, two of the defendants, to the plaintiff and James Frisbie, the third defendant and the son of Mildred Knudsen. Plaintiff alleged that the three defendants had conspired to defraud him by making the following false and material representations: (1) that no books or records existed showing the cheese factory's profit for the period February 1971 to September 1971, and (2) that the Knudsens had made $80,000 profit from the cheese factory for the same period. The jury found Mrs. Knudsen and James Frisbie liable for making the above representations in the amount of $20,000 general and $20,000 punitive damages. The trial court granted defendant Frisbie's motion for judgment n.o.v.[1] and entered judgment on the jury verdict against Mrs. Knudsen (hereinafter the defendant). She appeals and we reverse.

The facts, as pertinent to our consideration of this appeal, are as follows: Mr. and Mrs. Knudsen had owned and operated the cheese factory for many years, including the period from February 1971 to September 1971.[2] During that period, plaintiff and Frisbie expressed interest in purchasing the business and the parties entered into negotiations. Defendant, as found by the jury, represented to the plaintiff during the negotiations that there were no records showing the profit made by the cheese factory during that period, but that the amount of the profit was $80,000. There did, in fact, exist such records, and they showed that the factory had produced a net profit of substantially less than $80,000 during that period.

---

[1] Plaintiff initially cross-appealed the trial court's granting of defendant Frisbie's motion for judgment n.o.v. but, upon plaintiff's motion, the cross-appeal was dismissed.

[2] Actually the property involved in the land sales contract in this case was wholly owned by Mr. Knudsen. While Mrs. Knudsen was listed as a "vendor" in the contract, she did not sign the contract and was not a party thereto.

Plaintiff and Frisbie entered into a land sale contract with Mr. Knudsen in September 1971, whereby plaintiff and Frisbie agreed to purchase the real and personal property referred to collectively as the Reedsport Cheese Factory Company for $150,000. Plaintiff paid $20,000 down and agreed to pay $12,000 a year. By the time the September 1972 installment was due, plaintiff had come to believe that defendant and Mr. Knudsen had made fraudulent representations. On September 14, 1972, plaintiff notified the Knudsens of his election to rescind the contract and demanded the return of his $20,000 down payment. When no response was forthcoming, plaintiff filed a complaint in equity on September 27, 1972, seeking rescission of the land sale contract and return of plaintiff's down payment. The suit was dismissed upon plaintiff's motion for voluntary nonsuit on January 4, 1974, and on April 4, 1974, plaintiff instituted the present action seeking damages for fraud.

Defendant's first two assignments of error are the trial court's denial of defendant's motions for judgment of nonsuit and directed verdict. Both motions were pressed at trial by the defendant on two grounds: (1) that plaintiff's prior election of the remedy of rescission barred his present action for damages for fraud, and (2) that plaintiff had failed to prove damages legally recognizable in an action for fraud. Defendant conceded at oral argument that the former ground was not applicable in this case. The dispositive question on appeal, then, is whether the plaintiff submitted sufficient proof of his damages in order to justify the jury's verdict. We hold he did not.

Before we examine this issue, however, we find it expedient to consider defendant's third assignment of error relating to the admissibility of the testimony of plaintiff's expert witness, William Durbin, on the issue of the fair market value of the property covered by the land sale contract. In so doing, our disposition of the case on the issue of proof of damages should become more understandable.

Defendant moved at trial to strike this testimony on three grounds: (1) Durbin did not qualify as an expert; (2) the testimony itself involved Durbin's opinion of fair market value at a time too remote from the critical time of the sale of the property; and (3) the testimony was not in fact a legally valid estimate of the fair market value of the property covered by the land sale contract.

It is important to state at the outset that standard of review which we apply to these issues. In *Tuite v. Union Pacific Stages et al.,* 204 Or 565, 583-584, 284 P2d 333 (1955), we stated: '

> "It is firmly established in this state that the propriety of admitting opinion evidence and determining the qualifications of expert witnesses rest largely in the discretion of the trial court, and its determination of either question will not be disturbed on appeal unless there has been a manifest abuse of discretion. * * *"

■ The standards for judging the trial court's exercise of discretion in qualifying a witness as an expert are given in *Sandow v. Weyerhaeuser Co.,* 252 Or 377, 380, 449 P2d 426 (1969). There we said that, in order to qualify as an expert,

> "* * * the witness must have such skill, knowledge or experience in the field or calling in question as to make it appear that his opinion or inference-drawing would probably aid the trier of the facts in his search for the truth. * * *"

■ Clearly Mr. Durbin so qualified. He had been acquainted with the operation of the cheese factory for 25 years and, in fact, had made a special investigation of its tangible assets in early 1971, approximately five months before the sale. Durbin was "a corporate member" of DurMil Incorporated, a real estate holding company, and, as such, had participated in the buying and selling of real property and businesses in Oregon.

Defendant complains that, as a resident of Springfield, Oregon, which is approximately 90 miles from Reedsport, Durbin was not generally familiar with

property values in the Reedsport area. While such general familiarity has been recognized as one qualification to support an expert opinion of the fair market value of real property, it has also been recognized that, in dealing with specialized commercial property as opposed to general residential property, knowledge of the particular enterprise involved "is likely to be of far greater value in assisting the jury than that of a real estate broker who ordinarily would have little basis for fixing a value on property of the special nature involved here." *State Highway Com. v. Arnold et al.,* 218 Or 43, 67-68, 341 P2d 1089, 343 P2d 1113 (1959).

Durbin had been in the dairy business for 24 years, and had owned or worked in various cheese-making enterprises. He had the required specialized knowledge to qualify as an expert. His opinion as to the fair market value of the property in question was undeniably of aid to the trier of fact.

■ Defendant next complains that Durbin's opinion was of the fair market value of the property in February of 1971, while the critical value was that of September 1971, the time of the sale. While it is true that Durbin did estimate the fair market value as of the former date, he also testified that he viewed the property in September of 1971 and that there was no change other than the inventory, which he had excluded from his estimate. In *Pennebaker v. Kimble et al.,* 126 Or 317, 330, 269 P 981 (1928), the issue of remoteness in time was considered. Of the specialized commercial property there involved, we said:

> "* * * His inspection of [the property] occurred in 1925; the transaction in question took place in 1923. This variance in time would not of necessity render his testimony inadmissible in the absence of any circumstance showing that in the interval conditions in this kind of endeavor changed. * * *"

Defendant proffered no concrete evidence of change of conditions. The trial court's discretion in admitting this evidence must be upheld.

[ 48 ]

Finally, defendant mounts her most serious attack on Durbin's expert testimony. Defendant claims that the testimony itself was not a legally valid estimate of the fair market value of the property covered by the land sale contract. To support this contention, defendant cites three defects: (1) that Durbin's estimate was in truth Durbin's offer to purchase the cheese factory and was not an independent estimate of the fair market value; (2) that Durbin's estimate did not take into account the "going concern" value of the cheese factory but was based on a bare assets value; and (3) that Durbin's estimate did not cover all of the items covered by the land sale contract.

On the first point the transcript is replete with conflicting statements by Durbin. However, there was evidence from which the trial court could determine that Durbin's estimate of $60,000, while in fact the same as his offer, was also his estimate of the fair market value independent of that offer. This is true especially in view of the trial court's warning to Durbin that evidence of the offer itself was inadmissible.

Durbin's testimony touching on the second point was equally confusing. However, in the end, the trial court expressly found that Durbin had taken into consideration the "going concern" value and had determined that such value, in view of the fact that the cheese factory was not making money, was zero. The trial court did not abuse its discretion in making this conclusion.

■■ On the third point, however, there is no doubt. Durbin testifed repeatedly, without contradiction, that his estimate of $60,000 was based on his opinion of the fair market value of (1) the land upon which the cheese factory itself sat, (2) the building in which the cheese-making operations took place, and (3) the equipment therein. On the other hand, the property covered by the land sale contract included, in addition to these three items, a "dwelling located on Lot 1,

Block 80," "personal property" (office equipment on a list which was appended to the contract), and "the name Reedsport Cheese Factory Company." Thus, it appears from the record that Durbin's opinion of fair market value was not, in fact, that of the property covered by the land sale contract. This conclusion does not, of course, mean that the trial court erred in not striking the testimony in its entirety as defendant requested. Certainly, an expert, once qualified, is entitled to give, and the jury is entitled to receive, an opinion on the fair market value of only a portion of the property in question. There was, therefore, no error in the admission of this evidence.[3]

■ We are now faced with the most difficult aspect of this case, defendant's second assignment of error—that the trial court erred in denying defendant's motion for a directed verdict on the basis that plaintiff had failed to prove his damages. Proof of damages is a necessary element to make out a cause of action for fraud. Defendant asserts plaintiff's proof of damages was fatally defective in that plaintiff's complaint prayed for damages for fraud in the amount of $20,000 "as moneys paid on [the] contract," a restitutionary recovery not allowed in an action for fraud. The mere characterization of the damages sought should not, in and of itself, preclude recovery of such amount (or any

---

[3]Plaintiff asserts in his brief that even if Durbin's opinion testimony was inadmissible, there is other competent evidence which would establish the fair market value of the property covered by the land sale contract. There was testimony by Durbin which the jury was entitled to believe that Mr. Knudsen had offered to sell "the property" for $90,000. In *Smith v. Hurley,* 73 Or 268, 275-276, 143 P 1123 (1914), we cited 1 RCL, § 32, at 494, with approval:

> "Where the value of property owned by a party is in issue it is held, as a rule, that his declarations may be proved by the opponent. * * * While an offer of the owner of property to sell it at a certain price is not conclusive evidence of the value of the property, yet such an offer is competent evidence against him as an admission in fixing the value at or near the time when the offer was made."

However, it is clear that this offer suffers from the same infirmity as the offeree's "opinion" evidence; i.e., that it did not cover all of the items covered by the land sale contract. Again, this does not affect its admissibility, only the use which the jury would be permitted to make of it.

amount) so long as plaintiff's proof corresponds to the recovery available in this action.

■ It is well established in this state that, in an action for fraud, plaintiff's recovery is limited to that measured by the "out-of-pocket" rule unless the actionable misrepresentation was a warranty of value, in which case plaintiff could recover under the "benefit-of-the-bargain" rule. *Selman v. Shirley,* 161 Or 582, 609, 85 P2d 384, 91 P2d 312 (1939). Plaintiff in this case is limited to the damages recoverable under the "out-of-pocket" rule. Such damages are measured by the difference between the purchase price of the property and the fair market value of the same property on the date of the sale.[4] *Van de Wiele v. Garbade,* 60 Or 585, 591, 120 P 752 (1912). The burden, of course, is on the plaintiff to establish the purchase price and the fair market value of the property.

■ Plaintiff, in an action for fraud, could recover what amounted to a return of the purchase price only if he could establish that the fair market value of the property purchased was zero. *Id.* This, of course, plaintiff did not do. The purchase price was $150,000. The jury awarded plaintiff $20,000 in compensatory damages. The question then is, did plaintiff establish that the fair market value of the property covered by the land sale contract at the time of the sale was less than or equal to $130,000? From the foregoing discussion of the evidence of fair market value introduced by the plaintiff at trial, the answer must be "no." Plaintiff established only that certain items of property which were included in the land sale contract had a fair market value at the time of sale of $60,000. However unlikely it may be that the property which was included in the land sale contract but not included in plaintiff's evidence of fair market value was worth

---

[4] In contrast to the "out-of-pocket" measure of damages applicable in the present case, the "benefit-of-the-bargain" measure is determined by the difference between the actual value of the property received and its value had the representations as made been true. *See Selman v. Shirley,* 161 Or 582, 609, 85 P2d 384, 91 P2d 312 (1939).

more than $70,000, this court cannot supply that proof. Therefore, plaintiff's proof of damages was insufficient as a matter of law to sustain the jury's verdict, and the trial court erred in not granting defendant's motion for directed verdict.

Because of the disposition of this case, defendant's remaining assignments of error need not be considered.

Reversed.