Argued and submitted July 20, reversed and
remanded with instructions October 5, 1981

CALDWELL,
*Appellant - Cross-Respondent,*
*v.*
POP'S HOMES, INC.,
*Respondent - Cross-Appellant.*

(No. A7809-14657, CA 17951)

634 P2d 471

Paul J. Kelly, Jr., Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Glasgow, LaBarre & Kelly, Portland.

Anthony A. Buccino, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Buccino & Uffelman, Portland.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiff, the purchaser of a mobile home, brought an action for fraud and for violation of the Unfair Trade Practices Act (UTPA), alleging that the defendant, seller of the home,[1] misrepresented the length of time that the home could remain in its existing residential location and the year or model of the home. Plaintiff sought general and punitive damages on both causes of action. The jury returned a verdict for plaintiff, awarding him $3,400 in general damages on the fraud cause and $1,500 in general and $1,000 in punitive damages on the UTPA cause. Defendant moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The trial court granted judgment notwithstanding the verdict. Plaintiff appeals. We reverse and remand.

On appeal, plaintiff contends that the trial court erred in granting defendant's motion for judgment notwithstanding the verdict and asks that, in the event this court remands the case for a new trial, we do so with directions to the trial court to give a particular instruction on special damages. Defendant claims that the judgment notwithstanding the verdict was proper and, in the alternative, cross-appeals, urging that the trial court erred in failing to grant its motion for a directed verdict, in denying its motion to strike plaintiff's claim for punitive damages, and in instructing the jury on the measure of general damages.

In determining whether the judgment n.o.v. was proper we must determine whether, viewing the evidence in the light most favorable to plaintiff, any evidence supported the jury verdict. If so, the verdict must be reinstated.

"Our inquiry on review, therefore, is to search the record to ascertain whether it contains evidence which supports the verdict. In performing our function, we do not weigh the evidence. We are required to accept as being true all evidence and inferences therefrom in the light most favorable to the party who prevailed before the jury. This

---

[1] Plaintiff's complaint also sought rescission of the purchase agreement. At the close of his case plaintiff abandoned his claim for rescission and elected to proceed on the fraud and unlawful trade practices counts.

necessitates resolving any conflicts in the evidence in favor of that party." *Jacobs v. Tidewater Barge Lines,* 277 Or 809, 811, 562 P2d 545 (1977).

*See also, Huston v. Trans-Mark Services,* 45 Or App 801, 806, 609 P2d 848, *rev den* 289 Or 587 (1980); Or Const, Amended Art VII, § 3.[2]

Defendant's business is selling used mobile homes on consignment. Some sales are "in-park" sales, *i.e.,* sales of homes already located and set up for occupancy in mobile home parks. The rest of the sales involved mobile homes located on defendant's sales lot, *i.e.,* homes that do not have a space in a mobile home park. At the time of the sale in question, defendant maintained separate offices for the two types of sales, although both offices were located on the same lot. The office that handled lot sales was located on the front of the lot, and the office which handled in-park sales was located in back.

In March, 1978, plaintiff went to defendant's place of business because he was in the market for a used mobile home set up for occupancy in a residential park. Plaintiff had seen a newspaper advertisement of defendant's. Upon arriving at the lot, he was directed to the back office where he was told in-park sales were handled.

Plaintiff told defendant's salesperson, Tina Nance, what kind of home he was looking for. He explained to her his price range, that he had a pet and that he needed an in-park mobile home near downtown Portland. He told her that he was busy with school and work and did not have time or money to find a place for the home, to move it and to have it set up. After reviewing the mobile home listings, Nance identified two mobile homes, both in the Twin Oaks Trailer Park, that she thought would meet plaintiff's needs. She arranged for plaintiff to view the homes at a later date.

After seeing the homes, plaintiff and Nance returned to her office. Plaintiff indicated that he was interested in buying a home belonging to Grace Hunter. He

---

[2] Or Const, Art VII (Amended), § 3, provides, in pertinent part:

"In actions at Law * * * no fact tried by a jury shall be otherwise reexamined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. * * *"

asked Nance why Hunter was selling. Nance asked another employe who was in the office, who responded that it was because Hunter was looking for a larger mobile home. Plaintiff then made an offered to purchase the Hunter home for $7,000. That offer was rejected. A short time later, plaintiff offered $7,400, which was accepted. Plaintiff paid $1,500 down toward the purchase price of the home and financed the balance through a loan from a savings and loan company, which defendant helped arrange.

Plaintiff had not talked with the owners of the park before buying the home. After the purchase and while making arrangements to move, plaintiff learned that the park was being sold. In May, 1978, he moved into the park. In the early part of June, he received notice from the new owner that the park had been sold, that it would no longer be used as a mobile home park and that the residents would have to vacate the premises within 120 days. Plaintiff moved his mobile home in October, 1978. Because he was unable to find another park to meet his needs, he was forced to place the home in storage. Had he known the park was to be sold, he would not have bought the mobile home.

The listing agreement between Grace Hunter and the defendant was introduced in evidence. It indicates that the reason Hunter was selling her home was because the park was being sold. Nance testified that the listing cards she worked from were prepared from these listing agreements. She indicated that if the home had to be moved, the card would normally contain that information. She stated that the card she had on Hunter's home gave no such indication and that she herself did not see the original listing agreement and did not know what it said. Mr. Knakal, who was in charge of defendant's operations and who worked with plaintiff in financing his purchase, stated that another employe prepared the listing agreement with Hunter and that a secretary then prepared the listing card. The record does not show if Knakal knew the reason for the sale by Hunter.

The listing agreement also indicated that the mobile home is a 1963 model. The purchase agreement

signed by defendant and plaintiff stated that it is "approximately" a 1964 model. The security agreement and note initially signed by the plaintiff indicated that it was a 1964 model. The title, which was obtained by the savings and loan company after the loan agreement was signed, indicated that it is a 1962 model.

Plaintiff testified that he thought the mobile home was a 1964 model; he did not find out it was a 1962 model until after he had filed this lawsuit. However, he also indicated that at the time he bought the mobile home it would not have mattered to him whether it was a 1962 or a 1964 model.

Respecting damages, plaintiff called a real estate appraiser who testified that the present market value of the mobile home was $3,000. The appraiser indicated that this reduction in value was due not only to the fact that the home was not set up in a park but because it had been damaged from non-use. The same appraiser had done the original appraisal for the lending institution at the time plaintiff's purchase was financed. She testified that the home then had a market value of $7,400, a figure based in part on the fact that the home was set up and ready for occupancy in a trailer park. She indicated that if the home had to be moved from the park at the time of the sale, it would have been worth approximately $1,500 less.

We turn first to plaintiff's unfair trade practices claim. ORS 646.638(1) provides that:

"Any person who suffers any ascertainable loss of money or property, real or personal, as a result of wilful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or $200, whichever is greater. The court or the jury, as the case may be, may award punitive damages and the court may provide such equitable relief as it deems necessary or proper."

The specific sections plaintiff contends that defendant violated are ORS 646.608(1)(e) and (t). Those sections provide:

"A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person:

"* * * * *

"(e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that he does not have;
"* * * * *

"(t) Concurrent with tender or delivery of any real estate, goods or services fails to disclose any known material defect or material nonconformity; * * *"

■ Both sections relied upon by plaintiff pertain to representations concerning real estate, goods or services being furnished by a person to a consumer in the course of that person's business. Those sections make it a violation wilfully to misrepresent, among other things, the qualities, characteristics, uses and benefits of goods or to fail to disclose known material defects in the goods. In this case, defendant is charged with failing to tell plaintiff that the park was being sold. The testimony established that a mobile home's value would be substantially decreased if it had to be moved. The permanency of the location of the mobile home in the park was therefore both a "characteristic" and a "quality" of the home under ORS 646.608(1)(e). A change in ownership of the park obviously jeopardized an owner's ability to keep the mobile home to *in situ.* Failure to communicate this fact constituted a false representation concerning a characteristic or quality of the mobile home. The trial court's ruling to the contrary was error.

■ Defendant's second misrepresentation concerned the model year of the mobile home. Listing the home as a 1964 model when it was in fact a 1962 model was a misrepresentation about the quality or characteristic of the home. However, there was no evidence that it played any role in plaintiff's decision to buy the home. Plaintiff was not entitled to recover on this theory.[3] *See Terry v. Holden-Dhein Enterprises,* 48 Or App 763, 618 P2d 7, *rev den* (1980).

Because plaintiff had presented sufficient evidence to take his UTPA claim under ORS 646.608(1)(e) to the jury, the trial court should not have granted defendant

---

[3] There is no contention that the fraud action can be based on the misrepresentation of the year of the home.

judgment notwithstanding the verdict. However, defendant was entitled to a *new trial,* because the trial court erred in permitting the jury to consider defendant's misstatement of the mobile home's model year as a basis for awarding damages under the UTPA. Defendant's motion requested a new trial as alternative relief. *See* ORCP 63C. The trial court should have granted defendant a new trial on plaintiff's UTPA count instead of judgment notwithstanding the verdict.

■ We turn to plaintiff's claim for fraud. To establish a case for actionable fraud, plaintiff must prove:

> "* * * (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Green v. Uncle Don's Mobile City,* 279 Or 425, 431, 568 P2d 1375 (1977).

*See also, Rice v. McAlister,* 268 Or 125, 128, 519 P2d 1263 (1974). Defendant contends there was no evidence that it had made any false representations of fact to plaintiff or that it had actively concealed or failed to disclose a material fact that it had a duty to reveal. Defendant contends that it had no duty to speak as to what the mobile home park owners would or would not do and that plaintiff could not justifiably rely on defendant for information concerning the park. Defendant argues further that there was no evidence that it had intentionally deleted the reason for the sale by Hunter from the listing cards used by Nance, that plaintiff failed to show that he had suffered any loss or that any loss he did suffer was caused by defendant's representations.

■ There is no question that defendant represented this sale as the sale of an in-park home. This representation was, in fact, true: the mobile home was an in-park home. The alleged misrepresentation, concealment or nondisclosure was of the fact that the home could not remain in the park. The objectionable behavior was defendant's misrepresentation of the reason for Hunter's sale and its failure to disclose the fact that the park was being sold. There was evidence that plaintiff purchased in reliance on the

fact that the mobile home was ready for occupancy in a park. Plaintiff specifically wanted a home in a park where he could continue to live, and in that regard the representation was material. Defendant's behavior is actionable if it was intentional. Intent to deceive in an action for fraud can be established by proof that defendant knew the representation was false or that it was made recklessly without regard to its truth or falsity. *Huszar v. Certified Realty,* 278 Or 29, 32, 562 P2d 1184 (1977); *Bausch v. Myers,* 273 Or 376, 379, 541 P2d 817 (1975).

In this case, defendant had information that the park was being sold. This fact was not put on the listing cards that would be used by defendant's salespeople. Nance testified that normally such a fact would be indicated on the listing card. That the park was in the process of being sold would be material information to anyone specifically interested in an in-park home. The evidence suggests that Nance's statements concerning Hunter's reason for selling and Nance's failure to disclose that the park was being sold were both innocent misrepresentations on her part. However, given the listing agreement, the jury could infer that defendant intentionally withheld the real reason for the sale from the listing card.

"[A] principal who deliberately withholds material facts from his agent in order that the agent may innocently misrepresent the facts is guilty of fraud if the agent does in fact make such a misrepresentation and it is relied on by the third party." *Bodenhamer v. Patterson,* 278 Or 367, 373, 563 P2d 1212 (1979).

Defendant argues that it did not have a duty to inform plaintiff about the pending sale. It is true that there was no connection between the park owners and defendant. Defendant did not arrange for lease of the space and did not purport to have any control over plaintiff's continued use of the space. At the time plaintiff bought the mobile home, the sale of the park was simply pending and, in fact, might never have occurred.[4] However, the duty to disclose did not depend on any relationship between defendant and the

---

[4] At the time plaintiff bought the mobile home, the park's prospective owners had an option to purchase the park. The actual sale of the park was completed on June 1, 1978, after plaintiff had moved into the park.

mobile home park. The duty arose from the fact that the likelihood that the mobile home would remain in the park was crucial to plaintiff's decision to purchase, and information known by defendant and concealed from plaintiff concerned this crucial characteristic.

■ Silence or nondisclosure can be the basis for a fraud action. A party need not make an affirmative statement to be liable in fraud. *Musgrave et ux v. Lucas et ux,* 193 Or 401, 410, 238 P2d 780 (1951); *Whitlatch v. Bertagnolli,* 45 Or App 985, 989, 609 P2d 902 (1980); *Paul v. Kelley,* 42 Or App 61, 65, 599 P2d 1236 (1979). Where fraud is based on actual concealment, as opposed to simple nondisclosure, a duty to speak is not required. As we stated in *Paul v. Kelley, supra,*

"* * * Restatement (Second) of Torts §§ 550, 551 (1977) states that nondisclosure is actionable where there is a duty to speak, but notes no such duty requirement where there has been an active concealment. The distinction is made clearer by Prosser's classification of active concealment with affirmative statements as follows:

"'* * * Any words or acts which create a false impression covering up the truth, * * * or which remove an opportunity that might otherwise have led to the discovery of a material fact—as by floating a ship to conceal the defects in her bottom, * * * sending one who is in search of information in a direction where it cannot be obtained, * * * or even a false denial of knowledge by one in possession of the facts—* * * are classed as misrepresentations, no less than a verbal assurance that the fact is not true.' (Footnotes omitted.) Prosser, Law of Torts, § 106, at 695 (4th ed 1971)." 42 Or App at 65-66.

There was evidence here from which the jury could have found that defendant actively concealed the reason for the sale of the mobile home and, thus, the fact that the park was being sold. We need not find that defendant had an independent affirmative duty to inform plaintiff of the proposed sale.

■ Plaintiff's action is based on the behavior of a third party. The general rule is that an action for fraud cannot be predicated "on erroneous predictions of the future conduct of independent third parties." *Whitlatch v. Bertagnolli, supra,* 45 Or App at 990. However, fraud can be based on

proof that the defendant concealed a fact concerning relevant behavior of a third party presently known to it. In *Whitlatch* the plaintiffs, purchasers of a plumbing business and of the real property on which it was located, such defendant seller, alleging that the defendant intentionally concealed the fact that a portion of property was to be included in a condemnation proceeding. We held that, although it was not alleged that the property was actually condemned, a case for fraud was stated. Like the defendant in *Whitlatch,* there was evidence here that defendant intentionally concealed a fact presently known to it, *viz.,* the fact that a sale of the trailer park was pending. *See also, Johnson et ux v. Cofer,* 204 Or 142, 281 P2d 981 (1955); *Hansen v. Holmberg,* 176 Or 173, 156 P2d 571 (1945).[5]

■ Defendant argues that plaintiff should not recover because he did not inquire of the trailer park owners. Under the circumstances, plaintiff may have been negligent for his failure to do so. However, that does not defeat his claim for fraud. As the court stated in *Johnson et ux v. Cofer, supra:*

"* * * * * * The rule of law is one of policy. Is it better to encourage negligence in the foolish, or fraud in the deceitful? Either course has obvious dangers. But judicial experience exemplifies that the former is the less objectionable and hampers less the administration of pure justice. The law is not designed to protect the vigilant, or tolerably vigilant, alone, although it rather favors them, but is intended as a protection to even the foolishly credulous, as against the machinations of the designedly wicked. It has also been frequently declared that as between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him or was guilty of negligence in so doing.'" 204 Or at 149-150.

---

[5] In *Johnson et ux v. Cofer, supra,* a fraud action was predicated on the defendant seller's failure to disclose that a hotel bought by the plaintiff and intended to be used as such by plaintiff did not meet city requirements and would not continue to receive a permit for hotel use by the city. In *Hansen v. Holmberg, supra,* the defendant sold the plaintiff a beer tavern with the representation that plaintiff could continue to purchase the needed amount of beer from the brewery with which defendant was doing business. The defendant knew, however, that the supply of beer was about to be curtailed. The court held that under those circumstances a case for fraud was established.

*See also, Galego v. Knudsen,* 282 Or 155, 160-161, 578 P2d 769 (1978).

 The next issues for consideration concern damages. The proper measure of damages in a fraud case such as this one is the difference between the property's puchase price and its fair market value on the date of sale. This is known as the "out-of-pocket" rule. *Galego v. Knudsen,* 281 Or 43, 51, 573 P2d 313 (1978).[6] In this case, there was evidence that the fair market value of the mobile home at the time of the sale would have been approximately $1,500 less than the price it sold for if the home was moved from its then location. There was also evidence that the present value of the home, as compared to its value at the time of sale, had been diminished further by removal from its trailer space and consequent non-use. The jury's total award of $3,400 was supported by the evidence.

 Defendant argues that the trial court's instruction on damages was incorrect under *Galego v. Knudsen,* 281 Or 43 *supra.* Defendant has not set out the instruction excepted to, and we need not consider this assignment of error. Rule of Appellate Procedure 7.19. *See Edwards v. Uncle Don's Mobile City,* 273 Or 746, 750-751, 543 P2d 4 (1975). Defendant's argument is not well taken in any event. Its objection at trial, while referring to *Galego,* was actually based on its view that the evidence demonstrated that plaintiff had not been damaged. There is no preserved error.

Finally, defendant argues that the trial court erred in submitting the issue of punitive damages to the jury. There was sufficient evidence to permit the jury to consider punitive damages. *See, e.g., 2-D's Logging v. Weyerhaueser,* 53 Or App, 677, 632 P2d 1319 (1981).

The trial court erred in granting defendant judgment notwithstanding the verdict on the fraud count.

---

[6] If the actionable misrepresentation were a warranty of value, plaintiff could recover under the "benefit-of-the-bargain" rule. The measure of damages is the difference between the actual value of the property received and its value had the representations as made been true. *See Galego v. Knudsen, supra,* 281 Or at 51, n 4. In this case defendant did warrant the mobile home's value; therefore, plaintiff cannot recover under the "benefit-of-the-bargain" rule.

There was evidence to support the jury's verdict, including evidence to support its award of damages. Judgment for plaintiff on that count must be reinstated.

Because we remand for a new trial on the UTPA cause of action, we must consider plaintiff's contention that the trial court erred in refusing to instruct the jury on special damages.

Plaintiff sought special damages for the cost of financing the loan to purchase the mobile home. Plaintiff elected to affirm the contract of sale and sue for damages. He still owns the mobile home and cannot recover the purchase price he paid for it. The cost of financing the purchase is part of the purchase price and thus is not recoverable in this action.

Plaintiff also sought special damages for the cost of moving and storing the mobile home. In *Criqui v. Pearl Music Company,* 41 Or App 511, 599 P2d 1177, *rev den* 288 Or 173 (1979), we adopted the following standard with respect to damages recoverable in an action for fraud. We stated:

> " 'So far as the fact of causation is concerned, any loss which follows upon a transaction into which the misstatement induces the plaintiff to enter may be said to be caused by it; but the same considerations which limit liability in cases of tangible harm have operated here. In general, with only a few exceptions, the courts have restricted recovery to those damages which might foreseeably be expected to follow from the character of the misrepresentation itself. Thus if the plaintiff stores his goods in a warehouse respresented to him to be fireproof, and they are destroyed when it burns down, he can recover; and likewise where he invests in an automobile agency after false assurances of profits made by similar agencies, and goes bankrupt. But if false statements are made in connection with the sale of corporate stock, losses due to a subsequent decline of the market, or insolvency of the corporation, brought about by business conditions or other factors in no way related to the representations, will not afford any basis for recovery. It is only where the fact misstated was of a nature calculated to bring about such a result that damages for it can be recovered. Sometimes this has been expressed by saying that the representation in such a case is "immaterial" to the result; but the conclusion

is reached even though the plaintiff has in fact relied, and justifiably so, upon what he has been told.'" 41 Or App at 517-518, quoting from Prosser, Law of Torts, 732 § 110 (4th ed 1971).

Under the *Criqui* standard, we conclude that plaintiff, if he establishes his case on remand, is entitled to recover the cost of moving the mobile home. Those damages directly flow from defendant's misrepresentation and are a foreseeable consequence of it. He may also recover for any storage costs that in the language of *Criqui*, "might foreseeably be expected to follow from the character of the misrepresentation itself."

The judgment notwithstanding the verdict is reversed. The case is remanded with instructions to enter judgment for plaintiff on the fraud cause of action and to grant a new trial on the UTPA cause of action.

Reversed and remanded.