**In re Lee ZUMWALT, Debtor.**

**GATEWAY STAR, N.V., a corporation, and Michael Z. Olds, receiver of Terraceview Development, a limited partnership, Plaintiffs,**

v.

**Lee ZUMWALT, Defendant.**

**Bankruptcy No. 383–01317.**
**Adv. No. 83–0827.**

United States Bankruptcy Court, D. Oregon.

Sept. 12, 1985.

James M. Finn, Portland, Or., for plaintiffs.

R. Michael Elmer, Salem, Or., for defendant.

## FINDINGS GRANTING JUDGMENT OF NONDISCHARGEABILITY TO MICHAEL Z. OLDS, DENYING RELIEF TO GATEWAY STAR, N.V.

DONAL D. SULLIVAN, Bankruptcy Judge.

Gateway Star, N.V. ("Gateway") and Michael Olds, the receiver for an Oregon limited partnership known as Terraceview Development Co. ("Terraceview") filed a complaint against the debtor to obtain declarations of nondischargeability and judgments arising from the debtor's involvement in the limited partnership. Gateway was the sole limited partner and the debtor was the sole general partner of Terraceview. Gateway charged that the debtor fraudulently obtained a loan for Terraceview secured by Terraceview's principal assets through the use of a personal financial statement which was false under 11 U.S.C. § 523(a)(2). The receiver also charged that the debtor, while managing the partnership, fraudulently took monies from the partnership in violation of the defalcation, embezzlement and larceny provisions of 11 U.S.C. § 523(a)(4), and the willful injury provisions of 11 U.S.C. § 523(a)(6). My findings follow.

I find that the defendant fraudulently obtained the loans in question through the use of an intentionally false financial statement but that Gateway was not damaged because Terraceview subsequently satisfied the loans from the sale proceeds constructively generated by Gateway's foreclosure of the collateral securing the loan. In regard to the receiver's claim, I find that the debtor willfully and maliciously embezzled and converted funds of Terraceview, thereby injuring its property, and that the receiver is entitled to a judgment declaring that the pre-bankruptcy judgment obtained by the receiver is nondischargeable.

Phillipe Cras, a resident of Luxembourg, decided in the summer and fall of 1980 to invest money provided by his father in a Portland real estate development proposed by Lee Zumwalt, the defendant. With the

help of his father's Belgian lawyer as well as collaboration between his Portland lawyer and the defendant's Portland lawyer, the parties formed Terraceview as an Oregon limited partnership to undertake the development. Mr. Cras elected to make his investment through Gateway, a Netherlands Antilles corporation, as the limited partner. At Cras' insistence and before Gateway invested any money, Mr. Zumwalt, as general partner, provided the personal financial statement here at issue.

During the life of the project, Gateway invested approximately $1,071,500 in Terraceview. Of this, $130,000 was the initial capital contribution and the balance consisted of loans secured by trust deeds on the Terraceview property. Defendant diverted some of the funds to satisfy debts and obligations of Zumwalt Builders, Inc., a separate corporation which he owned. In all, Zumwalt withdrew approximately $175,000 for use in Zumwalt Builders, of which $50,000 Gateway conceded was authorized and $45,000 of which was eventually repaid. Disagreements arose because of these diversions, and the project did not do well. At the end of 1982 Mr. Cras instructed his attorney to dissolve Terraceview.

On April 21, 1983 the debtor filed bankruptcy and on July 19, 1983 plaintiffs filed this complaint. Seven months later, on February 22, 1984, Gateway foreclosed its trust deeds in the Terraceview property at a non-judicial trustee's sale. Gateway purchased the Terraceview property at the trustee's sale by bidding prices totalling in excess of $1,102,000. This exactly covered Terraceview's outstanding loan obligations to Gateway for principal, interest and other costs. Before the defendant filed bankruptcy, the Terraceview receiver, during the wind up of the limited partnership, obtained a circuit court judgment against the debtor for his unauthorized withdrawals but did not obtain contribution from the defendant as a general partner under O.R.S. 68.560 and O.R.S. 69.350.

As to Gateway's loan of $941,500, I find that defendant did induce it by means of fraudulent misrepresentation, i.e. his personal financial statement, within the meaning of 11 U.S.C. § 523(a)(2). The defendant's argument that Gateway did not rely on the financial statement must be rejected. In making its investment, Gateway relied upon both its own independent evaluation of the merits of the project as well as the financial stability of Mr. Zumwalt, who was to be the active general partner of the development with legal responsibility for all partnership deficits. As such, the financial statement of the general partner was material. The defendant intentionally riddled his financial statement with substantial falsehoods to induce Gateway to act on his proposals. He cannot now fairly argue that he did not need to present an untrue financial statement to get the loans for Terraceview. For example, he listed Phoenix property and Cooper Mountain property as held in his name and as having a combined value of approximately $425,000 when, in fact, his ex-wife owned the Phoenix property and he only had an option, which had expired, in the Cooper Mountain property. Similarly, he failed to disclose on the financial statement many existing debts which he later listed in his bankruptcy as being owing at that time, including a debt to Dr. Nathan Shlim for $286,905. Fraudulent intent rather than innocent negligence is the only reasonable explanation.

In spite of the defendant's actionable conduct, however, Gateway is not entitled to damages. At the outset, absent some statutory or common law exception, no plaintiff is entitled to a double recovery from different sources. Furthermore, in an action for fraud, only those damages which are the direct and necessary result of defendant's fraudulent acts and omissions are recoverable. *Oksenholt v. Lederle Laboratories, A Division of American Cyanamid Corporation*, 294 Or. 213, 656 P.2d 293, 299 (1982); *cf. Selman v. Shirley (I)*, 161 Or. 582, 85 P.2d 384, 393–94 (1938). Under the "flexible" approach of *Selman v. Shirley (II)*, 161 Or. 613, 91 P.2d 312, 322 (1939) (*affirming Selman I*,

supra ), the out of pocket rule of damages applies. *Galego v. Knudsen (II)*, 282 Or. 155, 578 P.2d 769 (1978) (*modifying Galego v. Knudsen (I)*, 281 Or. 43, 573 P.2d 313 (1978)); *Sorensen v. Gardner*, 215 Or. 255, 334 P.2d 471 (1959). Under special circumstances such as warranty of value, the benefit of the bargain rule may be applied. *Elizaga v. Kaiser*, 259 Or. 542, 487 P.2d 870 (1971); *Selman v. Shirley (I), supra.* No one has argued that federal dischargeability law is any different than state law in the foregoing respects.

The application of a proper rule of damages in this case must be made with discernment because the false representations related to the defendant's net worth, not to the value of the land, and because the defendant did not personally guarantee the partnership obligation. This requires the "bargain" and the "pocket" to which competing rules of damages must be applied to be measured by the defendant's responsibility as a general partner under the limited partnership agreement. This is not a question of election of remedies. As a further complication, the evidence also established that at the time of the transaction, which governs the timing of the application of the out of pocket rule, everybody, including Gateway, based upon independent value judgments, unaffected by the defendant's deception, felt that the land was worth at least the funds borrowed cushioned by their respective partnership contributions, even though Gateway wanted the defendant's net worth to be available under partnership law as a safety net. There is no evidence to refute this valuation. Consideration of Gateway's later appraisal in 1985 and later factors which might be permissible under the benefit of the bargain rule also in fairness requires consideration of the plaintiff's bid.

■ Gateway's bid, at the foreclosure sale, precludes the award of any damages under any theory. Plaintiff cannot successfully apply either the "money back rule" under a rescission theory or the "out of pocket rule" on a contract damage theory because the plaintiff affirmed the contract by directly foreclosing the trust deed and, more importantly, sold the property for the amount due. Under Oregon limited partnership law, as well as fraud law, the defendant, regardless of the remedy elected by plaintiff, has a right to compel Gateway to satisfy from the sale the loan which supports the remedy sought. Regardless of the fact that the sale occurred after filing of its complaint, Gateway is not free to ignore this right by suing the defendant under different damage theories independently of the limited partnership or the constructive sale proceeds. Notwithstanding the conflicting nuances of election theories, as a general partner of the borrower defendant has the same rights as the borrower (i.e. the limited partnership) to compel the lender to satisfy the loan and to account for its bid, even though the lender bid in its loan rather than cash. O.R.S. 69.431(1)(a); 69.350(1); 68.600(1); *Bank of Myrtle Point v. Security Bank of Coos County,* 67 Or.App. 512, 678 P.2d 772, *petition for review denied,* 297 Or. 339, 683 P.2d 1370 (1984). Alternatively, applying the "benefit of the bargain" standard (which may take into account later market valuation factors), because of its bid and satisfaction of the debt, Gateway would not reach defendant's duty as a general partner to make up the partnership deficit, even if his net worth actually exceeded $700,000 as falsely represented. No matter what rule is applied, Gateway must give defendant credit on its claim for damages for the full amount of its bid.

■ As a policy matter, bankruptcy courts do not favor collateral attacks on trustee deed sales based on the values obtained for the property sold at such sales. "The highest bid received in a properly conducted foreclosure action, where there has been no complaint of foul play or improper process, is the reasonably equivalent value of that property." *In re Upham,* 48 B.R. 695 (Bankr.W.D.N.Y.1985). *Compare Madrid v. Lawyers Title Insurance Corp.* (*In re Madrid*), 725 F.2d 1197

(9th Cir.1984), *affirming on other grounds*, 21 B.R. 424 (B.A.P. 9th Cir.1984) *with Durrett v. Washington National Insurance Co.* (*In re Durrett*) 621 F.2d 201 (5th Cir.1980). *Durrett*, which allowed such a collateral attack, did so because it found the foreclosure bid to be inadequate, thus constituting a fraudulent transfer as to the unsecured creditors. Here, the very same creditor who bid is, in effect, asserting his bid was fraudulent because too high. There is no authority in law, equity, logic, fairness, or common sense for such a result.

■ As to the claim of the receiver, defendant's withdrawals of funds constituted an embezzlement and a conversion of Terraceview property in violation of 11 U.S.C. § 523(a)(4) and (6). The funds diverted were partnership property. Defendant's diversion was in violation of O.R.S. 69.-350(1)(d) and O.R.S. 68.420(2)(a) and was willful and malicious. Defendant had authority from Phillipe Cras to initially apply $50,000 of Terraceview's funds to Zumwalt Builders' obligations. That was the only authority that he had. He had no authority to continue to divert partnership funds, and he knew it. At every opportunity Mr. Cras and his attorneys objected. Their insistence on notes and security agreements for these withdrawals does not under the circumstances evidence permission or an executed accord and satisfaction.

For the foregoing reasons, plaintiff, Gateway Star, N.V. is entitled to no relief, its complaint should be dismissed and any pre-bankruptcy liability asserted by this plaintiff should be declared discharged. Plaintiff, Michael V. Olds, receiver of Terraceview Development, a limited partnership, is entitled to a judgment declaring the Multnomah County Circuit Court judgment dated April 1, 1983 in # A–8212–07377 to be nondischargeable in bankruptcy to the extent of $125,000 with interest on this sum as allowed in the judgment. In other respects, the judgment should be declared dischargeable in bankruptcy.